1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT COURT OF CALIFORNIA

10

11 MICHAEL MATSON, and all others
similarly situated,

12                    Plaintiffs,                    No. 2:13-cv-00036-KJM-CKD

13          vs.

14
CITY OF RANCHO CORDOVA,

15                    Defendant.                    <u>ORDER</u>

16 _____/

17

18          This matter is before the court on defendant's motion to dismiss plaintiffs' first

19 amended complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (ECF No. 12.)

20 The motion was decided without a hearing.  For the reasons below, the court DENIES

21 defendant's motion.

22 I.          <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

23          This case arises from the impound and subsequent sale of plaintiff Michael

24 Matson's 1987 Toyota Camry by the Rancho Cordova Police Department.[1]  Matson and his

25 wife have allowed their adult son to drive this car for the last ten years or so.  In April 2011,

26 Matson's son was pulled over by a Rancho Cordova police officer for a traffic stop.  Because

27 _____

28          [1] The following background is drawn from plaintiffs' First Amended Complaint (ECF
No. 10) except where noted.

the adult son's California driver's license was suspended, the police officer "ordered the vehicle impounded for 30-days under California Vehicle Code section 14602.6." (First Amended Compl. ("FAC") ¶ 4, ECF No. 10.)

Matson was notified about the impound when he received a two-page CHP-180 ("Notice of Stored Vehicle") form.  The front of the form states that the "storage authority reason" is "14602.6 VC," and the back of the form notified Matson: "Under the provisions of Section 22852 VC, you have the right to a hearing to determine the validity of the storage." (*Id.*, Ex. 1.)

Matson timely requested an impound hearing under California Vehicle Code sections 14602.6 and 22852.  Rancho Cordova Police Officer Wright[2] conducted the hearing at the police station in Rancho Cordova.  Matson alleges that, prior to the hearing, he was not provided with any documents other than the CHP-180 form, and was not permitted to review any documents that Officer Wright had reviewed and considered.  At the hearing, Officer Wright did not present any evidence, nor did he summarize the factual basis for the impound of Matson's car.  "Officer Wright told Matson that it was his burden to present evidence warranting release of his vehicle, and Matson should tell Officer Wright the reasons which [he] believed justified the release," in spite of the fact "Matson's son had been driving the vehicle with a suspended license."  (FAC ¶ 18.)

At the hearing, Matson argued the car should be released because neither he nor his wife had any knowledge that their son's license had been suspended.  Further, Matson provided Officer Wright with a copy of *Smith v. Santa Rosa Police Dep't*, 97 Cal. App. 4th 546 (2002), "which held that a vehicle seized under section 14602.6 must be released from impound when the legal or registered owner establishes (s)he did not know the vehicle was being operated by a person who has a suspended or revoked driver's license."  (FAC ¶ 21.) Specifically, Matson told Officer Wright that he and his wife offered the car to their son about ten years earlier, and that they had "absolutely no knowledge their son had *subsequently*

---

[2] Plaintiffs allege they do not know Officer Wright's full name or rank.  (FAC ¶ 10.)

510 of 11

1    suffered a driver's license suspension or revocation."  (*Id.* ¶ 19 (emphasis in original).)

2    "Matson explained that, except for a 2-month period many years previous in which his son had

3    lived at home while recovering from a hospitalization, his son had not lived with him or his

4    wife for over a decade and was very seldom seen."  (*Id.*)  Matson told Officer Wright that his

5    son "first obtained a driver's license *after* he moved out of the family home," and that he and

6    his wife "were not aware of any legal troubles which would have caused them to suspect their

7    son's license had been suspended or revoked."  (*Id.* (emphasis in original).)

8            Officer Wright denied Matson's release request.  He "orally informed Matson

9    that the vehicle would not be released because [he] concluded that Matson and his wife did, in

10   fact, have knowledge of the suspended status of their son's driver's license."  (*Id.* ¶ 21.)[3]  In

11   denying Matson's request, Officer Wright made no "contemporaneous recording or notes" and

12   "issued no written decision of any kind" explaining the reasons "for his decision."  (*Id.* ¶ 24.)

13           Matson alleges that this hearing procedure is the Rancho Cordova Police

14   Department's "standard practice."  (*Id.*)  Specifically, Matson alleges: "A *written* summary of

15   the evidence presented at the . . . hearings and grounds for the refusal to release a vehicle is

16   *never* provided to a legal or registered owner when the hearing officer decides that the vehicle

17   will not be released."  (*Id.* (emphasis in original; internal quotation marks omitted).)

18           The total fees due, for tow and impound of the vehicle for the thirty days,

19   amounted to more than $1,500.  Because "money was tight and the vehicle was only worth

20   about" that much, Matson and his wife "elected not to pay for the release of the vehicle."  (*Id.*

21   ¶ 30.)  Later, the tow company sold the vehicle at a lien-sale auction.

22   /////

23   _____

24           [3] Officer Wright explained "he had reached this conclusion based on his review of a
     police report for the initial traffic infraction by Matson's son—presumably many years
25   earlier—which had led to the subsequent suspension of Matson's son's driver's license
     sometime after the initial traffic infraction . . . ."  (FAC ¶ 22.)  "According to Officer Wright,
26   th[is] police report indicated that Matson's son had given his parents['] address as his own,"
     and "[f]rom this, Officer Wright surmised that Matson's son had been living at his parent's
27   home at the time of the initial infraction . . . and therefore Matson and/or his wife must have
     known of the subsequent suspension of their son's driver's license . . . ."  (*Id.*)
28

                                             3

1     The Matsons received a letter from the tow company informing them that they

2     still "owe $1,690.00 in outstanding towing, storage and lien sale fees, and the matter will be

3     referred to collections if payment is not made."  (*Id.*)  The Matsons have not made payment, the

4     "matter has been referred to collections," and "the Matson[s] fear it will soon appear on their

5     credit report, if it has not already."  (*Id.*)

6     Michael Matson sued for damages under 42 U.S.C. § 1983, on behalf of a class

7     of similarly situated individuals, asserting the City of Rancho Cordova violated his rights to be

8     free from unreasonable search and seizure under the Fourth Amendment, and deprived him of

9     his property without due process of law under the Fourteenth Amendment.

10    Plaintiffs' initial complaint alleged the Rancho Cordova Police Department "did

11    not (and still does not) have an established policy concerning the impoundment of motor

12    vehicles under section 14602.6, and instead leaves the decision to impound, or not impound, to

13    the unfettered discretion of the officers at the scene, in violation of the 4th Amendment."

14    (Compl. ¶ 34(3), ECF No. 1.)  Plaintiffs amended their complaint as a matter of course, *see*

15    FED. R. CIV. P. 15(a)(1)(B), and their first amended complaint omits this allegation.[4]

16    On March 29, 2013, defendant filed the present motion to dismiss for failure to

17    state a claim.  (ECF No. 12.)  Plaintiffs opposed the motion on April 7, 2013 (ECF No. 14), and

18    defendants replied May 1, 2013.  (ECF No. 15.)

19    II.    STANDARD

20    Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move

21    to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court

22    may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts

23    alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

24    (9th Cir. 1990).

25    Although a complaint need contain only "a short and plain statement of the

26    claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a

27

28    _____
      [4] As discussed below, defendant argues plaintiffs should be judicially estopped from amending their complaint in this manner.

4

motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

III.    ANALYSIS

Defendant moves to dismiss plaintiffs' First Amended Complaint in its entirety for failure to state a claim under Rule 12(b)(6).  First, the court will address defendant's argument that plaintiffs' Fourteenth Amendment Due Process claim is barred because California provides adequate remedial post-deprivation process and because plaintiffs did not exhaust their judicial remedies.  Second, the court will address defendant's argument that plaintiffs have not sufficiently alleged a "custom, policy, or practice" concerning their Fourth Amendment *Monell* claim against the City of Rancho Cordova.

5

A.     Fourteenth Amendment Due Process Claim

Defendant seeks dismissal of plaintiffs' Fourteenth Amendment Due Process claim (Due Process claim), arguing that it should be dismissed because the California Tort Claims Act provides adequate remedial post-deprivation process.  In the alternative, Defendant argues this claim should be dismissed because plaintiffs have not exhausted their state judicial remedies.  These arguments are analyzed in turn below.

1.     Adequate Post-Deprivation Remedies

Defendant argues plaintiffs' Due Process claim should be dismissed because, under *Parratt v. Taylor*, 451 U.S. 527, 540–42 (1981), "a plaintiff may not pursue a Constitutional Due Process violation so long as the state provides an adequate remedial post-depr[i]vation process."  (Defs.' Mot. Dismiss FAC; Mem. P. & A. ("Mot. to Dismiss") 3:12-15, ECF No. 12.)  Specifically, defendant contends: the "Ninth Circuit has held that California's Tort Claims Act provides such a constitutionally adequate remedial post-depr[i]vation process." (*Id.* at 3:15–18 (citation omitted) (citing *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994)).)  Plaintiffs oppose, arguing *Parratt* does not apply because the deprivation in this case was the result of established procedures, not random acts of government officials. (Pl.'s Opp'n Def.'s Mot. Dismiss FAC ("Opp'n") 16:2–5, ECF No. 14.)

Under *Parratt*, the state can satisfy constitutional Due Process if it provides adequate remedial post-deprivation process, such as a hearing, 451 U.S. at 540–42; however, *Parratt* applies only if the government officials "acted in a random, unpredictable, and unauthorized way." *Zimmerman v. City of Oakland*, 255 F.3d 734, 738 (9th Cir. 2001).  In contrast, if "the state officer acted pursuant to some established procedure," post-deprivation remedies do not bar a constitutional Due Process claim. *Id.*

The following factors determine whether a state officer "acted in a random, unpredictable, unauthorized way," or instead acted "pursuant to [an] established procedure": the deprivation of property occurred "at a 'specific predictable point in the process'"; the deprivation occurred in circumstances in which it would be "absurd . . . to suggest" the government agency should hold a pre-deprivation hearing, or, in contrast, the government

6

agency's policy "prescribes . . . such a hearing"; and the officer was "delegated . . . the power

and authority to effect the very deprivation complained of." *Id.* at 739.  For example, in

*Parratt*, the plaintiff was a prisoner who asserted that prison officials destroyed his personal

property.  451 U.S. at 530.  The Supreme Court held that because "the deprivation occurred as

a result of the unauthorized failure of agents of the State to follow established state

procedures," the state's post-deprivation remedies were "sufficient to satisfy the requirements

of due process." *Id.* at 543–44.

    Here, plaintiffs allege a Rancho Cordova police officer impounded Matson's car

according to established procedures.  Specifically, plaintiffs allege the car was impounded for

thirty days under California Vehicle Code § 14602.6, and Officer Wright denied Matson's

appeal for early release at a hearing conducted in accordance with § 22852.  (FAC ¶¶ 4, 10.)

The police department conducted the hearing under delegated authority.  *See* CAL. VEH. CODE

§ 14602.6(b)–(d).  Because plaintiffs allege the deprivation occurred "pursuant to . . .

established procedure[s]," *Zimmerman*, 255 F.3d at 738, defendant has not shown its officers

"acted in a random, unpredictable, unauthorized way." *Id.*  Therefore, this portion of

defendant's motion to dismiss is DENIED.

    2.  Failure to Exhaust State Judicial Remedies

    Defendant argues, in the alternative, that the court should dismiss plaintiffs' Due

Process claim because plaintiffs have not "demonstrate[d] that [they] ha[ve] exhausted all

available . . . judicial remedies." (Mot. to Dismiss at 4:1–3.)  Specifically, defendant contends

plaintiffs' "claims are barred by res judicata," because plaintiffs did not "follow the appropriate

procedural course to file a petition for writ of mandate to seek review of Officer Wright's

decision." (*Id.* at 5:3–5.)  Plaintiffs counter defendant has not shown the "proceeding . . .

possessed the requisite judicial character such that res judicata or collateral estoppel may be

fairly invoked against a claimant in a later action." (Opp'n at 18:15–17 (internal quotation

marks omitted).)

    Under California law, the doctrine of judicial exhaustion "is a form of res

judicata, of giving collateral estoppel effect to the administrative agency's decision, because the

decision has achieved finality due to the aggrieved party's failure to pursue the exclusive judicial remedy for reviewing the administrative action," a mandamus action.  *Y.K.A. Indus., Inc. v. Redev. Agency of City of San Jose*, 174 Cal. App. 4th 339, 355 (2009).  This judicial-exhaustion doctrine applies if "there has been a quasi-judicial adjudication by an administrative tribunal, whether in the public or private context."  *Id.*

But first, for this doctrine to apply, the defendant must show that the administrative proceedings "possessed the requisite judicial character such that res judicata . . . principles may be fairly invoked . . . ."  *Id.* at 356.

> Indicia of proceedings undertaken in a judicial capacity include a hearing before an impartial decision maker; testimony given under oath or affirmation; a party's ability to subpoena, call, examine, and cross-examine witnesses, to introduce documentary evidence, and to make oral and written argument; the taking of a record of the proceeding; and a written statement of reasons for the decision.

*Id.* at 357 (quoting *Pac. Lumber Co. v. State Water Res. Control Bd.*, 37 Cal. 4th 921, 944 (2006)).

In this case, Rancho Cordova has not established any of the above indicia showing the impound hearing possessed the requisite judicial character.  For example, defendant does not contradict plaintiffs' allegations that, at the hearing, no testimony was given under oath, no evidence was presented by the impound-hearing officer, Matson had no opportunity to call witnesses or review documentary evidence, no record was made, and no written statement of reasons for the decision was issued.  As in *Y.K.A. Industries*, defendant "included nothing in [its] moving papers by way of argument or evidence regarding the character of the fact-finding process used or the adjudicatory basis for applying the doctrine of exhaustion of judicial remedies in this case."  174 Cal. App 4th at 350.[5]

---

[5] Defendant argues in its reply brief that plaintiffs' "argument[] should be rejected for the simple reason that . . . California appellate courts have already recognized the quasi-judicial nature of impound hearings."  (Def.'s Reply Opp'n Mot. to Dismiss FAC at 4:9–16, ECF No. 15 (citing *Smith*, 97 Cal. App. 4th at 552; *Samples v. Brown*, 146 Cal. App. 4th 787, 807 (2007)).)  Although, in the cases defendant cites, the courts issued writs of mandamus, the judicial nature of the administrative proceeding was not disputed or at issue in these cases.

1    Because defendant has not shown the impound hearing "possessed the requisite

2    judicial character," *id.* at 356, judicial exhaustion does not foreclose plaintiffs' Due Process

3    claim.  Therefore, defendant's motion to dismiss plaintiffs' Due Process claim is DENIED.

4         B.    Fourth Amendment Claim Under *Monell*

5         Defendant argues plaintiffs have not sufficiently alleged a "custom, policy, or

6    practice" so as to state a *Monell* claim against the City of Rancho Cordova.  First, defendant

7    contends an allegation from plaintiffs' initial complaint that Rancho Cordova's practice is to

8    leave impound decisions to their officers' discretion, contradicts the FAC, which omits this

9    allegation.  (Mot. to Dismiss at 6:1–3 (citing Compl. ¶ 34(3), ECF No. 1).)  Defendant argues

10   "[p]laintiff[s] should be judicially estopped [from] such inconsistent pleadings," (*id.* at 6:4),

11   and—based on the "discretion" allegation from plaintiffs' initial complaint—plaintiffs have not

12   "allege[d] a sufficient causal connection" between the policy and the constitutional violation.

13   (*Id.* at 6:20–24.)  Second, defendant argues plaintiffs have insufficiently alleged a policy or

14   widespread practice of violating the Fourth Amendment, because they only allege a single

15   incident, and their conclusory allegation that these impounds "'happen continuously' is

16   insufficient to assert a *Monell*-type violation."  (*Id.* at 6:25–7:3.)  Plaintiffs counter defendant

17   has not shown judicial estoppel applies, and argue that their "allegations specify the content of

18   the policies, customs, or practices the execution of which gave rise to [their] constitutional

19   injuries," and these "allegations are sufficient to 'give fair notice . . . to enable the opposing

20   party to defend itself effectively.'"  (Opp'n at 17:11–16.)

21        "[A] local government may not be sued under § 1983 for an injury inflicted

22   solely by its employees or agents.  Instead, it is when execution of a government's policy or

23   custom . . . inflicts the injury that the government as an entity is responsible under § 1983."

24   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

25        In order to state a *Monell* claim, "allegations in a complaint . . . may not simply

26   recite the[se] elements . . . , but must contain sufficient allegations of underlying facts to give

27

28   Thus, these courts did not hold that res judicata attached to the prior proceedings; these cases
     do not support defendant's judicial-exhaustion argument.

9

fair notice and to enable the opposing party to defend itself effectively." *A.E. ex rel.*
*Hernandez v. Cnty. of Tulare* (*A.E.*), 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*,
652 F.3d 1202, 1216 (9th Cir. 2011)).  In *A.E.*, the Ninth Circuit evaluated a complaint that the
district court had dismissed .  The complaint simply recited the elements of a *Monell* claim.  *Id.*
at 636–37.  The Ninth Circuit affirmed dismissal and held that the *Iqbal* plausibility standard
applies to *Monell* claims.  *Id.* at 637–38.  In applying *A.E.*, a district court in the Northern
District of California held recently that a complaint—strikingly similar to the complaint in this
case—stated a *Monell* claim:

> Plaintiffs' allegations, in contrast to those offered by the plaintiffs
> in *A.E.*, specify the content of the policies, customs, or practices
> the execution of which gave rise to Plaintiffs' Constitutional
> injuries. Plaintiffs allege that County Defendants "routinely
> enforce" § 14602.6 by[] seizing and impounding vehicles on the
> basis that the driver does not have a current, valid California
> driver's license . . . .

*Mateos-Sandoval v. Cnty. of Sonoma*, No. C11-5817, 2013 WL 415600, at *5 (N.D. Cal.
Jan. 31, 2013).

          Turning to defendant's first judicial-estoppel argument, defendant has not shown
that judicial estoppel precludes plaintiffs' amended pleading as inconsistent with the initial
complaint.  "The doctrine of judicial estoppel[] . . . precludes litigants from asserting
inconsistent positions in different forums."  *Fredenburg v. Contra Costa Cnty. Dep't of Health
Servs.*, 172 F.3d 1176, 1179 (9th Cir. 1999).  "Judicial estoppel applies when a party's position
is 'tantamount to a knowing misrepresentation or even fraud on the court.'"  *Johnson v. State,
Or. Dep't of Human Res., Rehab. Div.*, 141 F.3d 1361, 1369 (9th Cir. 1998).  Because
defendant has not shown that plaintiffs took an inconsistent position in a prior proceeding or
that their position in this case is tantamount to a "knowing misrepresentation," defendant's
judicial estoppel argument is unavailing.  *Cf. PAE Gov't Servs. Inc. v. MPRI, Inc.*, 514 F.3d
856, 859 & n.2 (9th Cir. 2007) ("As the litigation progresses, . . . some allegations fall by the
wayside as legally or factually unsupported. . . . Parties usually abandon claims because, over
the passage of time and through diligent work, they have learned more about the available
evidence and viable legal theories, and wish to shape their allegations to conform to these

newly discovered realities.  We do not call this process sham pleading; we call it litigation.").
Thus, plaintiffs were not judicially estopped from amending their initial complaint in this
manner, and the court considers plaintiffs' First Amended Complaint as amended.

Addressing defendant's second argument that plaintiffs' complaint as amended
does not state a *Monell* claim, the court finds plaintiffs have sufficiently alleged the content of
Rancho Cordova's policies to state a *Monell* claim.  As in *Mateos-Sandoval* but unlike *A.E.*,
plaintiffs' complaint recites more than the mere elements of a *Monell* claim.  Specifically,
plaintiffs allege that Rancho Cordova's Fourth Amendment violations occur as "the result of a
well-settled, widespread, long-existing pattern and practice and/or established policy . . . for at
least 10 years and was implemented, approved, and/or ratified by . . . the City."  (FAC ¶ 35.)
Further, as in *Mateos-Sandoval*, plaintiffs allege the Fourth Amendment violations occur
"continuously, as [the Rancho Cordova Police Department] impounds vehicles when [Cal. Veh.
Code §] 14602.6 does not authorize it." (*Id.*)

Therefore, defendant's motion to dismiss this claim is DENIED.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, defendant's motion to dismiss is DENIED.

IT IS SO ORDERED.

DATED:  August 7, 2013.

_____
UNITED STATES DISTRICT JUDGE